UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

FEDERAL TRADE COMMISSION and
OFFICE OF THE ATTORNEY
GENERAL, STATE OF FLORIDA,
DEPARTMENT OF LEGAL AFFAIRS,

    Plaintiffs,

v.                                            Case No. 6:20-cv-1192-WWB-DCI

GDP NETWORK LLC, G & G
SUCCESS LLC, G & N SQUARED LLC,
GINO DE PAZ, GRACE DE PAZ and
SHABANA KHUBLAL,

    Defendants.
_____/

## ORDER

THIS CAUSE is before the Court on Plaintiffs' Motion for Entry of Default Judgment and Permanent Injunction (Doc. 97) as to Defendants GDP Network LLC, G & G Success LLC, and G & N Squared LLC. United States Magistrate Judge Daniel C. Irick issued a Report and Recommendation (Doc. 105), in which he recommends that Plaintiffs' Motion be granted and that the Court enter Plaintiffs' Proposed Order (Doc. 97-1).

After a de novo review of the record, and noting that no objections were timely filed, the Court agrees in part with the analysis in the Report and Recommendation. "It is well-established in this circuit that an injunction demanding that a party do nothing more specific than 'obey the law' is impermissible." *Elend v. Basham*, 471 F.3d 1199, 1209 (11th Cir. 2006) (citing *Burton v. City of Belle Glade*, 178 F.3d 1175, 1201 (11th Cir. 1999)). Section III of the Proposed Order, "Prohibition Against Deceptive and Abusive Telemarketing Acts and Practices," does nothing more than require Defendants and their

officers, agents, employees, attorneys, and all other persons in active concert or participation with any of them to obey the law. (Doc. 97-1 at 19–20). Therefore, the Motion will be denied in this respect.

Accordingly, it is **ORDERED** and **ADJUDGED** as follows:

1. The Report and Recommendation (Doc. 105) is **ADOPTED in part** and made a part of this Order to the extent consistent with that stated herein.

2. Plaintiffs' Motion for Entry of Default Judgment and Permanent Injunction (Doc. 97) is **GRANTED in part** as set forth in this Order and Permanent Injunction and **DENIED** in all other respects.

3. The Clerk is directed to enter judgment in favor of Plaintiffs and against Defendants GDP Network LLC, G & G Success LLC, and G & N Squared LLC jointly and severally in the amount of $5,347,092.99 to be paid in accordance with the terms of this Order and Permanent Injunction. Thereafter, the Clerk is directed to close this case.

4. Having determined that this Court possesses jurisdiction over this matter, and venue is proper in this Court, the following Permanent Injunction is entered:

<u>**PERMANENT INJUNCTION**</u>

**I.    DEFINITIONS**

For the purpose of this Order and Permanent Injunction, the following definitions apply:

A. "**Asset**" includes any legal or equitable interest in, right to, or claim to, any property, wherever located and by whomever held, and all proceeds, product, offspring, rents, or profit of or from that property.

B. "**Asset Freeze**" means the provisions of the Preliminary Injunction (Doc. 50) that restrain and enjoin the use or sale of assets, including, but not limited to, the provisions of Sections V, VI, VIII and IX of the Preliminary Injunction.

C. "**Assisting Others**" includes:
   1. Performing customer service functions, including receiving or responding to consumer complaints;
   2. Formulating or providing, or arranging for the formulation or provision of, any advertising or marketing material, including any telephone sales script, direct mail solicitation, or the design, text, or use of images of any Internet website, e-mail, or other electronic communication;
   3. Formulating or providing, or arranging for the formulation or provision of, any marketing support material or service, including web or Internet Protocol addresses or domain name registration for any Internet websites, affiliate marketing services, or media placement services;
   4. Providing names of, or assisting in the generation of, potential customers; or
   5. Performing marketing, billing, or payment services of any kind.

D. "**Clear(ly) and Conspicuous(ly)**" means that a required disclosure is difficult to miss (i.e., easily noticeable) and easily understandable by ordinary consumers, including in all of the following ways:

1. In any communication that is solely visual or solely audible, the disclosure must be made through the same means through which the communication is presented. In any communication made through both visual and audible means, such as a television advertisement, the disclosure must be presented simultaneously in both the visual and audible portions of the communication even if the representation requiring the disclosure is made in only one means.

2. A visual disclosure, by its size, contrast, location, the length of time it appears, and other characteristics, must stand out from any accompanying text or other visual elements so that it is easily noticed, read, and understood.

3. An audible disclosure, including by telephone or streaming video, must be delivered in a volume, speed, and cadence sufficient for ordinary consumers to easily hear and understand it.

4. In any communication using an interactive electronic medium, such as the Internet or software, the disclosure must be unavoidable.

5. The disclosure must use diction and syntax understandable to ordinary consumers and must appear in each language in which the representation that requires the disclosure appears.

6. The disclosure must comply with these requirements in each medium through which it is received, including all electronic devices and face-to-face communications.

7. The disclosure must not be contradicted or mitigated by, or inconsistent with, anything else in the communication.

8. When the representation or sales practice targets a specific audience, such as children, the elderly, or the terminally ill, "ordinary consumers" includes reasonable members of that group.

E. "**Corporate Defendants**" or "**Default Defendants**" means GDP Network LLC; G & G Success LLC, also doing business as YF Solution LLC, QSC Professionals, and G.C.D. Management LLC; and G & N Squared LLC, also doing business as Dynamic Solution Group, and each of their subsidiaries, affiliates, successors, and assigns, and by whatever other names they may be known, and their successors and assigns, as well as any subsidiaries, affiliates, and any fictitious business entities or business names created or used by these entities, or any of them.

F. "**Debt Relief Product or Service**" means:

1. With respect to any mortgage, loan, debt, or obligation between a Person and one or more secured or unsecured creditors or debt collectors, any Product or Service represented, expressly or by implication, to:

    a. stop, prevent, or postpone any mortgage or deed of foreclosure sale for a Person's dwelling, any other sale of collateral, any repossession of a Person's dwelling or other collateral, or otherwise save a Person's dwelling or other collateral from foreclosure or repossession;

    b. negotiate, obtain, or arrange a modification, or renegotiate, settle, or in any way alter any terms of the mortgage, loan, debt, or obligation,

5

      including a reduction in the amount of interest, principal balance, monthly payments, or fees owed by a Person to a secured or unsecured creditor or debt collector;

c. obtain any forbearance or modification in the timing of payments from any secured or unsecured holder or servicer of any mortgage, loan, debt, or obligation;

d. negotiate, obtain, or arrange any extension of the period of time within which a Person may (i) cure his or her default on the mortgage, loan, debt, or obligation, (ii) reinstate his or her mortgage, loan, debt, or obligation, (iii) redeem a dwelling or other collateral, or (iv) exercise any right to reinstate the mortgage, loan, debt, or obligation or redeem a dwelling or other collateral;

e. obtain any waiver of an acceleration clause or balloon payment contained in any promissory note or contract secured by any dwelling or other collateral; or

f. negotiate, obtain, or arrange (i) a short sale of a dwelling or other collateral, (ii) a deed-in-lieu of foreclosure, or (iii) any other disposition of a mortgage, loan, debt, or obligation other than a sale to a third party that is not the secured or unsecured loan holder.

The foregoing shall include any manner of claimed assistance, including auditing or examining a Person's application for the mortgage, loan, debt, or obligation.

    2. With respect to any loan, debt, or obligation between a Person and one or more unsecured creditors or debt collectors, any Product or Service represented, expressly or by implication, to:

        a. repay one or more unsecured loans, debts, or obligations; or

        b. combine unsecured loans, debts, or obligations into one or more new loans, debts, or obligations.

G. "**Defendants**" means all of the Individual Defendants and the Corporate Defendants, individually, collectively, or in any combination.

H. "**Individual Defendants**" means Gino de Paz, Grace de Paz, and Shabana Khublal, and by whatever other names each may be known.

I. "**Person**" means any individual, group, unincorporated association, limited or general partnership, corporation, or other business entity.

J. "**Product or Service**" means any good or service, including any plan or program.

K. "**Receiver**" means Johnathan E. Perlman, Esq., the permanent receiver appointed in the Preliminary Injunction (Doc. 50) and any deputy receivers that shall be named by the permanent receiver.

L. "**Receivership Entities**" means Corporate Defendants as well as any other entity that has conducted any business related to the marketing, promotion, offering for sale, or sale of Defendants' debt relief service, including by receiving Assets derived from any activity that is the subject of the Complaint in this matter, and that the receiver determines is controlled or owned by any Defendant.

M. "**Remotely Created Payment Order**" means any payment instruction or order drawn on a person's account that is created by the payee or the payee's agent and deposited into or cleared through the check clearing system. The term includes, without limitation, a "remotely created check." It also includes any check that is not created by the paying bank and that does not bear a signature applied, or purported to be applied, by the person on whose account the check is drawn.

N. "**Telemarketing**" means any plan, program, or campaign which is conducted to induce the purchase of goods or services by use of one or more telephones, and which involves a telephone call, whether or not covered by the Telemarketing Sales Rule ("**TSR**").

## II. BAN ON DEBT RELIEF PRODUCTS AND SERVICES

Default Defendants are permanently restrained and enjoined, whether acting directly or through an intermediary, from advertising, marketing, promoting, offering for sale, or selling, or assisting others in the advertising, marketing, promoting, offering for sale, or selling, of any debt relief product or service.

## III. PROHIBITED MISREPRESENTATIONS AND OMISSIONS

Default Defendants and their officers, agents, employees, attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order and Permanent Injunction, whether acting directly or indirectly, in connection with the advertising, marketing, promoting, offering for sale, or selling of any product or service, are permanently restrained and enjoined from:

A. Misrepresenting, or assisting others in misrepresenting, expressly or by implication:

      1. any material aspect of the nature or terms of any refund, cancellation, exchange, or repurchase policy, including the likelihood of a consumer obtaining a full or partial refund, or the circumstances in which a full or partial refund will be granted to the consumer;

      2. that any person is affiliated with, endorsed or approved by, or otherwise connected to any other person, government entity, public, non-profit, or other non-commercial program, or any other program;

      3. the nature, expertise, position, or job title of any person who provides any product or service; or

      4. any other fact material to consumers concerning any product or service, such as: the total costs, any material restrictions, limitations, or conditions, or any material aspect of its performance, efficacy, nature, or central characteristics; and

  B. Failing to disclose, or assisting others in failing to disclose, clearly and conspicuously, before a consumer consents to pay for a product or service offered:

      1. the total cost to purchase, receive, or use the product or service;

      2. the quantity of the product or service;

      3. any additional fees the consumer may incur as a result of the product or service; or

      4. any material aspect of the performance, efficacy, nature, or characteristics of the product or service.

**IV.   PROHIBITION AGAINST UNSUBSTANTIATED CLAIMS**

Default Defendants and their officers, agents, employees, attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order and Permanent Injunction, whether acting directly or indirectly, in connection with the promoting or offering for sale of any product or service, are permanently restrained and enjoined from making any representation or assisting others in making any representation, expressly or by implication, about the benefits, performance, or efficacy of any product or service, unless the representation is non-misleading, including that, at the time such representation is made, they possess and rely upon competent and reliable evidence that is sufficient in quality and quantity based on standards generally accepted in the relevant fields, when considered in light of the entire body of relevant and reliable evidence, to substantiate that the representation is true.

**V.   PROHIBITED PAYMENT PRACTICES**

Default Defendants and their officers, agents, employees, attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order and Permanent Injunction, whether acting directly or indirectly, in connection with the promoting or offering for sale of any product or service, are permanently restrained and enjoined from:

A.   Obtaining payment by taking a cash advance against a consumer's credit card; and

B.   Causing billing information to be submitted for payment without first having obtained the consumers' express, informed consent.

**VI.   MONETARY JUDGMENT AND PARTIAL SUSPENSION**

The judgment set forth in this Order and Permanent Injunction shall be subject to the following terms and conditions:

A.   Within seven days of the entry of this Order and Permanent Injunction, Default Defendants are ordered to pay to the Federal Trade Commission ("**FTC**" or "**Commission**") $5,347,092.99. Such payment shall be made by electronic funds transfer in accordance with instructions previously provided by a representative of the FTC.

B.   This Order and Permanent Injunction is the result of a government agency action on behalf of injured purchasers of Defendants' debt relief product or service and may serve as the basis to recover any surety bond, letter of credit, certificate of deposit, or other form of security filed with the Florida Department of Agriculture and Consumer Services ("**FDACS**"). Restitution may be paid from any such surety bond, letter of credit, certificate of deposit, or other form of security filed with the FDACS.

C.   All money paid to the FTC pursuant to this Order and Permanent Injunction may be deposited into a fund administered by the FTC or its designee on behalf of both the FTC and the State of Florida. This fund shall be used for consumer redress and any attendant expenses for the administration of any redress fund. If representatives of the Commission decide that direct redress to consumers is wholly or partially impracticable or money remains after redress is completed, Plaintiffs may, in their discretion, apply any remaining money for such other relief, including consumer notification remedies, as they determine to be reasonably related to Defendants' practices alleged in the Complaint. Any money not used for such relief shall be distributed among the Commission and the State of Florida in the following manner:

      1. The State of Florida shall be reimbursed for attorney's fees and costs it incurred in this matter including, but not limited to, its costs of investigation and litigation, to be deposited to the Department of Legal Affairs Revolving Trust Fund.

      2. All remaining joint funds shall be divided equally between the Commission and the State of Florida, with half to be deposited to the U.S. Treasury, and half to be deposited to the Florida Department of Legal Affairs Revolving Trust Fund for compliance and future monitoring. Default Defendants have no right to challenge any actions Plaintiffs or their representatives may take pursuant to this Section.

    D. The asset freeze is modified to permit the transfers identified in this Section.

## VII. CUSTOMER INFORMATION

Default Defendants and their officers, agents, employees, attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order and Permanent Injunction, are permanently restrained and enjoined from directly or indirectly:

    A. Failing to provide sufficient customer information to enable the FTC to efficiently administer consumer redress. If a representative of the FTC requests in writing any information related to redress, Default Defendants must provide it, in the form prescribed by the FTC, within fourteen days;

    B. Disclosing, using, or benefiting from customer information, including the name, address, telephone number, e-mail address, Social Security Number, other identifying information, or any data that enables access to a customer's account (including

a credit card, bank account, or other financial account), that any Defendant obtained prior to entry of this Order and Permanent Injunction in connection with the advertising, marketing, telemarketing, promoting, offering for sale, or sale of any debt relief product or service; and

      C.     Failing to destroy such customer information in all forms in their possession, custody, or control within thirty days after receipt of written direction to do so from a representative of Plaintiffs.

Provided, however, that customer information need not be disposed of, and may be disclosed, to the extent requested by a government agency or required by law, regulation, or court order.

## VIII.   COOPERATION WITH PLAINTIFFS

Default Defendants must fully cooperate with representatives of Plaintiffs in this case and in any investigation related to or associated with the transactions or the occurrences that are the subject of the Complaint. Default Defendants must provide truthful and complete information, evidence, and testimony. Default Defendants must appear for interviews, discovery, hearings, trials, and any other proceedings that a Plaintiffs' representative may reasonably request upon five days written notice, or other reasonable notice, at such places and times as a Plaintiffs' representative may designate, without the service of a subpoena.

## IX.   COOPERATION WITH RECEIVER

Default Defendants must fully cooperate with and assist the receiver and the receiver's professionals in this case and in any investigation related to or associated with the transactions or the occurrences that are the subject of the Complaint and the duties

imposed on, or powers granted to, the receiver by any current or future order of the Court. This cooperation and assistance shall include, but not be limited to, providing any information to the receiver and the receiver's professionals that is reasonably necessary to enable the receiver to exercise his authority and discharge his responsibilities under the applicable orders of the Court. Default Defendants must provide truthful and complete information, evidence, and testimony. Default Defendants must cause their officers, employees, representatives, or agents to appear for interviews, discovery, hearings, trials, and any other proceedings that the receiver or the receiver's professionals may reasonably request upon five days written notice, or other reasonable notice, at such places and times as the receiver may reasonably designate, without the service of a subpoena.

## X. ACKNOWLEDGMENTS

A. Each Default Defendant, within seven days of entry of this Order and Permanent Injunction, must submit to Plaintiffs an acknowledgment of receipt of this Order and Permanent Injunction sworn under penalty of perjury.

B. For five years after entry of this Order and Permanent Injunction, each Default Defendant must deliver a copy of this Order and Permanent Injunction to: (1) all principals, officers, directors, managers, and members; (2) all employees having managerial responsibilities for conduct related to the subject matter of the Order and Permanent Injunction and all agents and representatives who participate in conduct related to the subject matter of the Order and Permanent Injunction; and (3) any business entity resulting from any change in structure as set forth in the Section titled Compliance Reporting. Delivery must occur within seven days of entry of this Order and Permanent

14

Injunction for current personnel. For all others, delivery must occur before they assume their responsibilities.

C. From each individual or entity to which a Default Defendant delivered a copy of this Order and Permanent Injunction, that Default Defendant shall obtain, within thirty days, a signed and dated acknowledgment of receipt of this Order and Permanent Injunction.

## XI. COMPLIANCE REPORTING

Default Defendants shall timely make the following submissions to the FTC:

A. One year after entry of this Order and Permanent Injunction, each Default Defendant must submit a compliance report, sworn under penalty of perjury. Each Default Defendant must: identify the primary physical, postal, and e-mail address and telephone number, as designated points of contact, which representatives of Plaintiffs may use to communicate with Default Defendant; (2) identify all of that Default Defendant's businesses by all of their names, telephone numbers, and physical, postal, e-mail, and Internet addresses; (3) describe the activities of each business, including the goods and services offered, the means of advertising, marketing, and sales, and the involvement of any other Defendant; (4) describe in detail whether and how that Default Defendant is in compliance with each Section of this Order and Permanent Injunction; and (5) provide a copy of each Order Acknowledgment obtained pursuant to this Order and Permanent Injunction, unless previously submitted to the FTC.

B. For twenty years after entry of this Order and Permanent Injunction, each Default Defendant must submit a compliance notice, sworn under penalty of perjury, within fourteen days of any change in the following: (1) any designated point of contact;

or (2) the structure of any Corporate Defendant or any entity that Default Defendant has any ownership interest in or controls directly or indirectly that may affect compliance obligations arising under this Order, including: creation, merger, sale, or dissolution of the entity or any subsidiary, parent, or affiliate that engages in any acts or practices subject to this Order and Permanent Injunction.

C. Each Default Defendant must submit to the FTC notice of the filing of any bankruptcy petition, insolvency proceeding, or similar proceeding by or against such Default Defendant within fourteen days of its filing.

A. Any submission to the FTC required by this Order and Permanent Injunction to be sworn under penalty of perjury must be true and accurate and comply with 28 U.S.C. § 1746, such as by concluding: "I declare (or certify, verify, or state) under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on: ___" and supplying the date, signatory's full name, title (if applicable), and signature.

B. Unless otherwise directed by an FTC representative in writing, all submissions to the FTC pursuant to this Order and Permanent Injunction must be emailed to DEbrief@ftc.gov or mailed by overnight courier (not the U.S. Postal Service) to: Associate Director of Enforcement, Bureau of Consumer Protection, Federal Trade Commission, 600 Pennsylvania Avenue, NW Washington, DC 20580; and Assistant Attorney General, Office of the Attorney General, Consumer Protection Division, 135 West Central Blvd., Suite 1000, Orlando, Florida 32801. The subject line must begin: *FTC, et al. v. GDP Network LLC, et al.*, FTC Matter No. X200043.

**XII.    RECORDKEEPING**

Default Defendants shall create certain records for twenty years after entry of this Order and Permanent Injunction and retain each record for five years. Specifically, each Default Defendant must create and retain the following records:

A.    Accounting records showing the revenues from all goods or services sold;

B.    Personnel records showing, for each person providing services, whether as an employee or otherwise, that person's name, address, telephone numbers, job title or position, dates of service, and (if applicable) the reason for termination;

C.    Records of all consumer complaints and refund requests, whether received directly or indirectly, such as through a third party, and any response;

D.    All records necessary to demonstrate full compliance with each provision of this Order and Permanent Injunction, including all submissions to the FTC and the State of Florida;

E.    A copy of each unique advertisement or other marketing material; and

F.    Copies of agreements, applications, and contracts with suppliers, payment processors, and list brokers.

**XIII.    COMPLIANCE MONITORING**

For the purpose of monitoring Default Defendants' compliance with this Order and Permanent Injunction and any failure to transfer any assets as required by this Order and Permanent Injunction:

A.    Within fourteen days of receipt of a written request from a representative of Plaintiffs, each Default Defendant must: submit additional compliance reports or other requested information, which must be sworn under penalty of perjury, appear for

17

depositions, and produce documents for inspection and copying. Plaintiffs are authorized to obtain discovery, without further leave of Court, using any of the procedures prescribed by Federal Rules of Civil Procedure 29, 30 (including telephonic depositions), 31, 33, 34, 36, 45, and 69.

  B. For matters concerning this Order and Permanent Injunction, Plaintiffs are authorized to communicate directly with each Default Defendant. Default Defendant must permit representatives of Plaintiffs to interview any employee or other person affiliated with any Default Defendant who has agreed to such an interview. The person interviewed may have counsel present.

  C. Plaintiffs may use all other lawful means, including posing, through their representatives, as consumers, suppliers, or other individuals or entities, to Default Defendant or any individual or entity affiliated with Default Defendants, without the necessity of identification or prior notice. Nothing in this Order and Permanent Injunction limits the FTC's lawful use of compulsory process, pursuant to 15 U.S.C. §§ 49, 57b-1.

## XIV. COMPLETION OF RECEIVERSHIP

The appointment of the receiver over receivership entities, pursuant to the Preliminary Injunction (Doc. 50), is hereby continued, as modified, as follows:

  A. The receiver is directed and authorized to accomplish the following within ninety days after entry of this Order and Permanent Injunction, but any party or the receiver may request that the Court extend the receiver's term for good cause:

    1. Complete the process of taking custody, control, and possession of all assets of receivership entities, pursuant to Sections XV and XVI of the Preliminary Injunction;

2. Complete, as necessary, the liquidation of all assets of receivership entities, and all other assets in the receivership estate, without further order of the Court;

3. Prepare and submit a report describing the receiver's activities pursuant to this Order and Permanent Injunction, and a final application for compensation and expenses; and

4. Distribute to Plaintiffs any remaining liquid assets at the conclusion of the receiver's duties.

B. Upon completion of the above tasks, the duties of the receivership shall terminate, and the receiver shall be discharged.

## XV. RETENTION OF JURISDICTION

This Court retains jurisdiction of this matter for purposes of construction, modification, and enforcement of this Order and Permanent Injunction.

**DONE AND ORDERED** in Orlando, Florida on February 11, 2022.

_____
WENDY W. BERGER
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record